UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN F. FRYER, ) | |
| ) | |
|   PLAINTIFF ) | |
| ) | |
| V. ) | CIVIL ACTION NO.1:09-cv-10178 |
| ) | |
| A.S.A.P. Fire and Safety Corporation, Inc. ) | |
| ) | |
| Joseph Sheedy,  AND ) | |
| ) | |
| Brian Cote ) | |
|   DEFENDANTS ) | |
| ) | |

## PLAINTIFF'S MEORANDUM IN SUPPORT OF HIS POST TRIAL MOTION FOR  ATTORNEY FEES AND COSTS

### I. Introduction.

     Plaintiff Stephen Fryer respectfully submits this Memorandum in support of his attached Motion for Attorney Fees, which motion is brought under each and all of the following statutes set forth in the Motion:

     1. The USERRA fee shifting provision is found at  38 U.S.C Sec. 4323(a)(2)(A); [1]

---

[1] **§ 4323. Enforcement of rights with respect to a State or private employer**

        ***

(a) (2) A person may commence an action for relief with respect to a complaint against a State (as an employer) or a private employer if the person--

(A) has chosen not to apply to the Secretary for assistance under section 4322(a) of this title;

(B) has chosen not to request that the Secretary refer the complaint to the Attorney General under paragraph (1)

2. The Massachusetts Wage Act fee shifting provision is found at M.G.L . c. 149, Section 150 for both pre and post July 12, 2008 awards;[2]

3. The Massachusetts Overtime Act's fee shifting provision is found at M.G.L. c 151B, Sec 1B; [3] and

---

\*\*\*

(h)(2)   In any action or proceeding to enforce a provision of this chapter by a person under subsection (a)(2) who obtained private counsel for such action or proceeding, **the court may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses.** (emphasis added)

---

[2] Id.

[3] Chapter 151: Section 1B. Overtime compensation; failure to pay; penalties; collection proceedings; unclaimed awards; deposit of funds

*[ First paragraph effective until July 12, 2008. For text effective July 12, 2008, see below.]*

  Section 1B. Any employer or the officer or agent of any corporation who pays or agrees to pay to any employee less than the overtime rate of compensation required by section one A shall have violated this section and shall be punished or shall be subject to a civil citation or order as provided in section 27C of chapter 149, and each week in which such employee is paid less than such overtime rate of compensation and each employee so paid less, shall constitute a separate offense. In addition, if any person is paid by an employer less than such overtime rate of compensation, such person may recover in a civil action three times the full amount of such overtime rate of compensation less any amount actually paid to him or her by the employer<u>, together with costs and such reasonable attorney's fees as may be allowed by the court,</u> and any agreement between such person and the employer to work for less than such overtime rate of compensation shall be no defense to such action. At the request of any employee paid less than such overtime rate of compensation, the attorney general may take an assignment of such wage claim in trust for the assigning employee and may bring any legal action necessary to collect such claim, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The attorney general shall not be required to pay a filing fee in connection with any such action.

*[ First paragraph as amended by 2008, 80, Sec. 6 effective July 12, 2008. For text effective until July 12, 2008, see above.]*

  Any employer or the officer or agent of any corporation who pays or agrees to pay to any employee less than the overtime rate of compensation required by section one A shall have violated this section and shall be punished or shall be subject to a civil citation or order as provided in section 27C of chapter 149, and each week in which such employee is paid less than such overtime rate of compensation and each employee so paid less, shall constitute a separate offense. In addition, if a person is paid by an employer less than such overtime rate of compensation, the person may institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for the full amount of the overtime rate of compensation less any amount actually paid to him by the employer. An agreement between the person and the employer to work for less than the overtime rate of compensation shall not be a defense to such action. An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for lost

2

4. The Massachusetts Discrimination Act's fee shifting provision is found at MGL c. 151B, Sec 9.[4]

## II. Background [5]

Sergeant Stephen Fryer, a member of the Massachusetts National Guard, commenced this action in February, 2009 pursuant to each of the above statutes.  The nub of his claim was that after he received his notice that he would be sent to Iraq on February 17, 2009 (as opposed to the one weekend per month /two weeks per summer duty usual for the Guard), that A.S.A.P, his employer, and its owners and agents, began to discriminate against him, withholding commissions prior to his deployment, totally ignoring him and his family during his deployment, then, upon his return from Iraq in

overtime compensation **and shall also be awarded the costs of the litigation and reasonable attorneys' fees**. At the request of any employee paid less than such overtime rate of compensation, the attorney general may take an assignment of such wage claim in trust for the assigning employee and may bring any legal action necessary to collect such claim, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The attorney general shall not be required to pay a filing fee in connection with any such action... (Emphasis added)

[4] Chapter 151B: Section 9. Construction and enforcement of chapter; inconsistent laws; exclusiveness of statutory procedure; civil remedies; speedy trial; **attorney's fees and costs; damages**

Section 9. **This chapter shall be construed liberally for the accomplishment of its purposes...**

***

An action filed pursuant to this section shall be advanced for a speedy trial at the request of the petitioner. If the court finds for the petitioner, it may award the petitioner actual and punitive damages. **If the court finds for the petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust** ... (Emphasis added)

[5] The facts stated within this Memorandum have been attested to in the final paragraph of the Declaration of Nancy Richards-Stower.

May, 2008, by failing to promptly reinstate him, and then reinstating him to a demoted position, withholding commissions, overtime and mileage pay, and finally, firing him after his repeated requests for reinstatement to his pre-deployment job, or one which allowed for him to receive the same compensation/similar duties as his pre-deployment job.

Plaintiff's lawyers began their representation of Sgt. Fryer in the spring of 2008, after his return from Iraq, on a contingency fee basis, taking a very significant economic risk in so doing, but the contingency agreement was required, as the plaintiff was financially devastated by A.S.A.P.'s failure to promptly reinstate him, which required him to attempt financial survival on delayed unemployment compensation; then, upon reinstatement in July, 2008, still financially devastated as about ¼ of his past compensation was not available to him as his demoted position made it nearly impossible for him to earn commissions; and now he had significant motor vehicle and related out of pocket expenses

When Plaintiff was fired on October 22, 2008, he had little to lose by bringing a legal claim, but finding experienced employment attorneys located in New Hampshire and licensed in Massachusetts, willing to risk litigating an employment case in federal court (required jurisdictionally for USERRA claims and the only court in which a trial might be scheduled within a year of filing), on a risk basis, was not easy.

Besides presenting as a client in a high-pressure economic crisis, with an extended family dependent on him, in the midst of a swirling emotional crisis, counsel faced the

added fact that Sgt. Fryer faced another imminent deployment, this time to Afghanistan, to take place as early as January 2010. Thus, it was crucial that Sgt. Fryer's trial be completed prior to his deployment. This placed additional pressures on his counsel, one of whom was a solo practitioner and required that significant amounts of time (not compensable in any fee petition) had to be set aside, solely for this case, precluding the interviewing and screening of, and filing claims for, new potential and actual clients whose cases would otherwise provide the future income for the firms in the coming year.

Plaintiff and his counsel understood that Plaintiff's trial had to precede his future deployment, as that deployment carried with it the very real risk of plaintiff returning from war unable to testify; or changed in a way that the testimony could be ineffective, or, of course, the possibility that Sgt. Fryer could lose his life in battle, requiring a very difficult, and probably impossible and economically prohibitive posthumous litigation.

In addition, counsel faced the disincentive that nearly all of the witnesses to the claims of Sgt. Fryer remained employed by A.S.A.P. and that several had been granted ownership interests in its related company while he was in Iraq. There was also the General perception, which had to be overcome, that all persons returning from fighting in the Middle East came back defective, physically and/or mentally (indeed that argument was made about the Plaintiff in Defendant's closing, despite zero evidence of such personality twist elicited at trial). The lost pay amount, while very significant to the Plaintiff and his family, was, by employment law standards, modest.

Accordingly, Plaintiff's counsel worked diligently and at financial and personal sacrifice to negotiate, prepare and execute a trial schedule allowing the trial to occur in November, 2009, before the possible January 2010 deployment (and before the winter holiday season which holiday season can unsettle jurors focused on family and religious traditions.).

During the pre-trial litigation process, Plaintiff's attorneys took multiple depositions (Messrs. Cote, Sheedy, Tapley, Goodwin, Pena, Plomondon), provided a comprehensive Rule 26 Disclosure, and voluntarily supplemented it during the litigation, and they issued comprehensive document requests and interrogatories.  But they were ignored.

Despite repeated requests for a response to the discovery requested, as the clock ticked towards the trial date, repeated inquiries went unanswered.  Finally, several piles of documents exceeding 1000 pages, unnumbered and many carrying unknown handwriting on time cards purporting to be those of the Plaintiff, which should have carried the Plaintiff's, but did not, were delivered to Attorney Meyer's office. Missing for significant periods of time were most, or all, of the commission incentive sheets Sgt. Fryer had turned in.  (None of the interrogatories were ever answered, even after the Motion to Compel was filed[6].) Without any other remedy, Plaintiff's counsel were forced to file a

---

[6] As the calendar sped by, Plaintiff did not want to risk postponing the trial date by forcing the issue of the never answered interrogatories and weakly answered document requests when it was

Motion to Compel and for Sanctions. The court never heard the motion, but, subsequent to that motion, Defendants produced a few more documents and made A.S.A.P.'s co-owner Cote available by phone to Attorney Nancy Richards-Stower in her attempt to determine what it was the documents produced purported to show, and who had created them, and the location of documents created by Plaintiff but not produced.     As Plaintiff's exasperated counsel were scrambling to unravel the evidence, not wanting to delay the upcoming trial by additional filings of discovery motions, Attorney Richards-Stower's phone call with Cote underscored the difficulty of Plaintiff's task: there were no extant records clearly showing Plaintiff's regular hours worked, overtime hours recorded by him, or paid to him, or commissions and vacation earned; these categories had, from time to time, been merged in alternative ways, even from paycheck to paycheck, depending on the decision of Mr. Cote.   Sometimes, he suggested, a check might not "add up" because some   "truck fee" had been deducted from the "salary"; sometimes vacation pay was included in "salary" but not under the "vacation column"; sometimes commissions were added into the "salary" portion, all without consistent, accurate delineation on the only documents produced. This required an unnerving amount of analysis time and attempts to "just do the math"  to see what had been included in the gross salary amount, as Cote

made clear at the pre-trial status conference that the arguing of the discovery motion was not to take place that day. By that time, defendant had made Mr. Cote available for the informal telephone interview with Attorney Richards-Stower. The information provided by Mr. Cote about the lack of consistent recordkeeping procedures appeared to moot the likelihood of much helpful information flowing from any responses to the never-answered interrogatories. Documents emailed to Attorney Richards-Stower anent to that telephone conference merely confirmed that conclusion.  However, there was no way for Plaintiff's counsel to know that the documents and interrogatories they had served could never yield the data sought to maximize Plaintiff's claims for commissions and overtime, until this informal telephone call (10/29/09) which was subsequent to the filing of the Motion to Compel Discovery and for Sanctions (filed 9/22/09).

suggested, because his past accounting methods had been loose.   The various possible underpinnings for each payment's "gross salary" were almost limitless, but as plaintiff's claim for commissions and overtime were dependent on at least some provable amounts, many alternative document assessments were performed (and, eventually, a few were determinable).

Increasing the frustration was the assertion by A.S.A.P.  that it could not reproduce the paycheck stubs originally received (but mostly lost in a flood) and, by which, Plaintiff could easily explain to the jury the bookkeeping nightmare, pinning onto the defendant the responsibility for accurate record keeping, the lack thereof which provides an employee the right to estimate based on available records and memory.   Because of this  "informal" or "loose" bookkeeping practice (which Mr. Cote said had since been tightened up by an accounting firm), each document of the 1000+ produced had to be indexed and coded for the alternative comparisons required.   As Plaintiff scrambled to try to obtain and understand the poor extant evidence of his hours, earnings and commissions, defendants did little.  Besides taking the plaintiff's deposition and receiving the voluntarily produced Rule 26 materials (supplemented voluntarily during the course of the litigation by the Plaintiff's counsel), no discovery was ever served on the Plaintiff. No interrogatories. No document requests. However, as Plaintiff had a reasonable right to believe such basic discovery would be served and form the basis of examination at deposition and cross examination at trial, time was spent gathering the information for those purposes.   This

was extremely difficult due to the chaos of Plaintiff's life, with mortgage foreclosure and water turnoff notices landing in the mailbox at all the worst times.

## III. Argument: Plaintiff Prevailed at Trial on All Counts Tried and is Entitled To Attorney Fees and Costs pursuant to the above-referenced fee shifting provisions.

Each of the statutes listed in the motion (and in this Memorandum, supra), expressly provide for the awarding of attorney fees and costs to the prevailing party, and USERRA specifically makes expert fees "and other litigation expenses" compensable by the Defendants (at 38 U.S.C Sec. 4323)). [7] It is understood that even in light of the statutory history and traditions of civil rights and wage claims fee shifting statutes, that much discretionary power is placed with the trial court in the awarding of fees, both as to the approval of rates and the approval of time.

As Plaintiff won on all counts, he is the prevailing party. As his claims were all interconnected, he has equivalent rights under each of the fee shifting statutes to full fees, costs and expenses and his "universal success" eliminates the need to analyze what issues or facts proved in one claim were required for proof in another, an exercise which may be required when the issue on fees is "substantial success" with some claims being won and others lost. Plaintiff won all his claims. (He was not awarded punitive damages, but that

---

[7] 7 § 4323. Enforcement of rights with respect to a State or private employer
                                              ***
(a) (2) A person may commence an action for relief with respect to a complaint against a State (as an employer) or a private employer if the person--
    (A) has chosen not to apply to the Secretary for assistance under section 4322(a) of this title;
    (B) has chosen not to request that the Secretary refer the complaint to the Attorney General under paragraph (1)
                                              ***
(h)(2)  In any action or proceeding to enforce a provision of this chapter by a person under subsection (a)(2) who obtained private counsel for such action or proceeding, the court may award any such person who prevails in such action or **proceeding reasonable attorney fees, expert witness fees, and other litigation expenses.** (emphasis added)

may have been the result of jury confusion evidenced by the jury verdict form's unanswered question preceding the punitive damages amount question.)

To facilitate as prompt as possible judgment on the attorney fee petition, Plaintiff's counsel have omitted, and in other instances listed as "No Charge" the (very significant) efforts put forth on claims not tried, and for many other "jointly performed tasks," so they have not asked for fees for counts, though interrelated, not pursued (i.e., the state defamation count, the state 151B harassment count, and the federal FLSA count).[8]

## IV. Reasonable Fee Determined by Computing Lodestar Amount

In civil rights employment cases, the basic approach has been to calculate fees by the "lodestar" amount, and to use some, or all, of the factors set forth in the Fifth Circuit's seminal opinion in Johnson v. Georgia Highway Express, Inc., 488, F.2d 714 (5th Cir. 1974), which approach was endorsed by Congress in the legislative history of the Attorneys' Fees Award Act of 1976 and by the United States Supreme Court on Moor v. Alameda, 411 U.S. 693 (1973). The factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skills requisite to perform the legal services properly; (4) the prelusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community for similar work; (6) the fixed or contingent nature of the fee; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained (9) the experience, reputation and ability of the attorney(s); (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Most of these have been discussed above; others are discussed in the attached affidavits of Attorneys Rodgers, Rudavsky and Powers.

---

[8]   Although there is support for including these items and time spent processing the analysis to drop them out of concern for jury confusion, no charges have been requested for their research and analysis and proof issues. Some entries were maintained in the fee listing as "no charge" but most were never posted on the computer program fee listings.

The "loadstar/multiplier" approach requires a determination of "loadstar", by multiplying the hours reasonably worked on the case by the reasonable hourly rate for those services.  This approach has been endorsed by the U.S. Supreme Court in a number of cases, including Blanchard v. Bergeron, 489 U.S. 87 (1989), Pennsylvania v. Delaware Valley Citizens Council, 483 U.S. 711 (1987); City of Riverside v. Rivera, 477 U.S. 561 (1986); Blum v. Stenson, 465 U.S. 886 (1984) and Hensley v. Eckerhart, 461 US. 424 (1983).[9]

During the entire litigation, Plaintiff lived in Jaffrey, New Hampshire, Attorney Meyer's office was in Manchester, Attorney Richards-Stower's office was in Merrimack, N.H. and she lived in Scituate, Massachusetts.  Attorney Richards-Stower travel time was billed at the shorter of the distances for the depositions held in Chelmsford; that is, for deposition attendance, Richards-Stower billed for the travel time and expense from Merrimack, N.H. to Chelmsford, according to Mapquest.com as opposed to the much more significantly lengthy actual travel time from Scituate, Massachusetts to Chelmsford, Massachusetts (which drive can exceed 2 hours with traffic).  As Scituate is closer to Boston than Merrimack, all court appearances carry the actual travel mileage and travel time from Scituate to the federal court. Travel time has been broken out within the task the travel served, to allow the court to reduce the hourly rate of reimbursement if it sees fit to do so (see discussion of attorney travel time below).[10]

_____

[9] Arguments and cases compiled by Attorney Heather Burns, published in conference materials, N.E. NELA Regional Conference, "Fighting for Justice in the Workplace," May 9-10, Omni Parker House, Boston, at p. 319, et sec..

[10]  Some courts approve travel time at the regular hourly rate of the attorney time:

> "...Since it was reasonable to employ out of town counsel, it was necessary for counsel to travel to necessary proceedings and other matters. Travel time billed at an attorney's usual rate has routinely been awarded as a matter of course. See, e.g. Wayne v. Village of Sebring, 36 F.3d 517 (6th Cir. 1994), Citizens Ins. Co. of Am., 2007 WL 2902213 at *6..."

Communities for Equity v. Michigan High School Athletic Assn., Case No. 1:98-cv-479 (3/31/08) (A gender discrimination case involving female athletes under Title IX of the Civil

Rights Act and the Equal Protection Clause of the U.S. Constitution. and Michigan's Civil Rights Act.).   See also <u>Curtis v. Bill Hanna Ford, Inc.</u>, 822 F.2d 549 (5th Cir., 1987):

> *The court also erred in concluding that travel time to and from the EEOC hearing, and time before the EEOC, was not compensable. Time spent representing a client before the EEOC when required by Title VII is compensable under 42 U.S.C. Sec. 2000e-5(k). New York Gaslight Club v. Carey, <u>447 U.S. 54</u>, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). Curtis is entitled to $2,170 (16 hours X $125 per hour) in EEOC related time.*

Because all the travel time for which payment is requested is actual drive time *during drives done by the driving attorney, and, thus, during which no other substantive or billable work could have be done*, full fees are requested.  However, Plaintiff brings to the attention of the court that some courts allow only for reduced fee rates for travel time, (although no cases have been found where that travel time is specified as drive time by the billing lawyer).  For example, in <u>McDonald v. Armontrout,</u> 860 F.2d 1456 (8th Cir. 1988), the Appeals Court upheld the District Court's 50% reduction for travel time in this constitutional civil rights case involving the death row inmates at the Missouri State Penitentiary:

> *Plaintiffs also argue that it was error for the District Court to reduce by fifty percent the hourly rate for attorney travel time. They assert that under Craik v. Minnesota State University Board, 738 F.2d 348 (8th Cir.1984), and Rose Confections, Inc. v. Ambrosia Chocolate Co., 816 F.2d 381 (8th Cir.1987), travel time must be compensated at the same hourly rate as other work. In Craik, however, we simply said that the district court's award of fees for travel time at the full rate was not unreasonable on the particular facts there before us. Craik, 738 F.2d at 350-51. And in Rose we said that the district court should "award fees at the full hourly rate ... unless it determine[d] in its discretion that such a recovery would be unreasonable." Rose, 816 F.2d at 396 (emphasis added). Neither case holds that fees for travel time must always be awarded at the full hourly rate. The District Court concluded that the rate for travel time should be lower in this case and we do not find that decision to run afoul of applicable law or to be unreasonable.*      (footnote continued on next page)

The federal courts anticipate reimbursement for travel time in the payment of appointed counsel for criminal cases:   See **Chapter 2: Appointment and Payment of Counsel** (**www.uscourts.gov/defenderservices/Chapter_2.cfm#226**):

> ***2.26 Travel Time.*** *Compensation shall be approved for time spent in necessary and reasonable travel. Ordinarily, allowable time for travel includes only those hours actually spent in or awaiting transit. Accordingly, if a trip necessarily and reasonably requires overnight lodging, compensable travel time to the destination from the claimant's office would terminate upon arrival and check-in at the hotel*

## V. The number of Hours Spent on the Plaintiff's Case is Reasonable.

Plaintiff submits the attorney fee listings for each of his counsel's offices, those of Nancy Richards-Stower and Jon Meyer.  The attorneys (and Attorney Meyer's staff) entered their charges contemporaneously as they performed the work.  The fee listing (a/k/a "billing" records) contains specific descriptions of the services rendered as well as the amount of time expended in the performance of the services.  Because Plaintiff employed two co-counsel, operating out of remote offices (Attorney Meyer in Manchester, New Hampshire; Attorney Richards-Stower in Merrimack, New Hampshire and, due to family illness, often from Scituate, Massachusetts and sometimes from Yarmouth, Maine and even from vacation in Poland), counsel have been careful to minimize the time billed for the same event and over one hundred emails from Nancy Richards-Stower (additional to those listed in her fee listing) have not been charged for.  However, both counsel did appear for all depositions taken by the Plaintiff and the Plaintiff's deposition taken by Defendant, because, based on experience, in-person attendance was more efficient than one attorney remaining behind, left to read and outline the depositions without any ability to observe voice tone, body language and other universal signs indicating stress, anger or mendacity.  The joint attendance also allowed counsel shortcuts in their discussions and trial strategy.   At the time Defendants' depositions were taken (each by Attorney Meyer), it was not clear which of Attorney Meyer or Attorney Richards-Stower would be examining and/or cross examining a particular witness at trial.  Both counsel were required for pivotal client interviews for the same reason.  Apart from those matters which require visual contact for full "disclosure",

---

*or other place of accommodation plus travel time returning directly to the claimant's office from said destination. Compensation for travel time shall be at a rate not to exceed the rate provided in subsection (d) of the Act for "time reasonably expended out of court."*

counsel have dropped, respectively, joint efforts tasks from their fee listings which, while required, could invite objection, and further delay in Plaintiff's seeing any final judgment or benefit resulting from his victory before his Afghanistan deployment, now anticipated for March, 2010 or before his family's now-noticed eviction from the family home due to foreclosure.

While both attorneys are members of the bars of New Hampshire and Massachusetts, Attorney Richards-Stower has a higher concentration of Massachusetts practice and recent litigation experience. Dividing the claims, for the most part, between counsel, with Attorney Meyer focusing on USERRA, and Attorney Richards-Stower focusing on the state wage and discrimination matters was an efficient approach to a case whose complexity may not meet the eye. There are few USERRA reported decisions, and not a plethora of academic treatises. The awkwardness of the structure of USERRA, with its overlapping areas of liability presented challenging proof issues, especially with the significant documentation challenges (see supra) presented by the Defendants' record keeping practices and lack of discovery responses. In addition, it is simply never a good decision for only one attorney to appear for any party in any employment case in federal court or state court. The various matrix of overlapping damages, expert reports, choice of damages to pursue from the various provisions of state and federal law, on top of the routine stressors of trying a case in a city remote from the comforts of one's law office, all contribute to the sensibility of two seasoned attorneys as co-counsel, both during the investigation and trial preparation stages through trial through post trial efforts.

Attorney Richards-Stower has included for attorney fee payment, 343.65 hours (plus $590.00 in expenses). Attorney Meyer has included for attorney fee payment 205.09 hours for his work, 1.5 hours for his intern's work; 2.6 and .9 hours of his paralegals' work (plus $7683.16 in costs/expenses). In light of the time pressures and quirky documentation problems presented in this case, the time for, and rates at, which payment is sought are very reasonable.

## VI. The hourly rates applied to Plaintiff's case

Attorney Richards-Stower's billing rate is $350 per hour and Attorney Meyer's billing rate is $325 per hour.  Their attached respective affidavits set forth their decades of experience and professional history. In evaluating the reasonableness of the hourly rates, the experience of the attorney is important.  Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 560 (1st Cir. 1986).  As important are the "prevailing rates in the community for comparable qualified attorneys." United States v. Metropolitan Dis. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). Furthermore, both attorneys are highly sought after as counsel by employees and inexperienced counsel.  The dedicated time to this case because of its special pressures of time and emergency timing, with deployment and eviction risks omnipresent, required the elimination of many other, probably more lucrative, new cases, and certainly, for hourly rate cases not taken, cases not as financially risky.  The exclusive time and commitment required by the circumstances of this case supports Plaintiff's argument that the fees sought are not only reasonable, but also modest.

Plaintiff submits with this filing the declarations of three of Massachusetts' most accomplished, respected, and well-known employment litigation attorneys, each of whom has known both of Plaintiff's counsel for years.  Each of the three attests to the modesty of the rates requested by Plaintiff's counsel.  The three include Attorney Dahlia Rudavsky, of Messing, Rudavsky & Weliky, P.C. (who bills at $535 per hour[11]), who has known both Plaintiff's attorneys professionally for many years, and who describes the fee rates requested by Plaintiff's attorneys to be *"reasonable, and in fact, modest."*[12]  Attorney Rudavsky notes that she *"is familiar with the prevailing market rates for Boston area law*

---

[11] Rudavsky Declaration, paragraph 8
[12] Id., paragraphs 10 and 11

*firms and with awards of attorneys' fees made to counsel for prevailing plaintiffs in employment discrimination cases.*[13]"

Plaintiff also submits the declaration of nationally recognized Kevin Powers of Rodgers, Powers and Schwartz, LLP (who was awarded $400 per hour in *Clifton v. MBTA*) who has known both in NELA activities and on specific cases, and worked with Attorney Richards-Stower for approximately 15 years, and has known and worked with Jon Meyer for a number of years. Attorney Powers says that both attorneys should be awarded *"at least $350 per hour"* based on his *"knowledge of their work and knowledge of what other attorneys, both defense and plaintiff attorneys in Eastern Massachusetts are earning."*[14]

Finally, Plaintiff submits the declaration of Elizabeth Rodgers, also of Rodgers, Powers and Schwartz, LLP, who has had a separate set of experiences and working relationships with each of Plaintiff's counsel than her partner, Kevin Powers. Attorney Rodgers notes that an employment attorney with as little experience as two years, was awarded $385 per hour in a case litigated in this federal court.[15] Attorney Rodgers states that Attorney Richards-Stower would command fees exceeding $400 per hour if she charged the prevailing rate for her experience as charged by *"the larger firms,"*[16] and that she *"should be paid at the prevailing rate paid to both plaintiff and defendant counsel at our highest sector of the bar, well in excess of the $350/hour she has requested."* Attorney Rodgers also notes the particular difficulty a trial places on a solo practitioner like Attorney Richards-Stower.[17] Attorney Rodgers is also personally familiar with Jon Meyer and his pioneering civil rights work,[18] his top-notch education at Wesleyan and Harvard,

---

[13] Id., paragraph 9
[14] Powers Declaration, paragraphs 17 and 21
[15] Rodgers Declaration, paragraph 4 and fn 2
[16] Id. paragraph 4
[17] Id., paragraph 4
[18] Id., paragraph 7

and bears witness to the high regard he is held among employment attorneys in New England. Attorney Rodgers also assesses the relative novelty of the claims asserted[19] and the importance of experienced attorneys being willing to take military discrimination cases,[20] and again underscoring her familiarity with the fees charged and awarded to other long time employment attorneys practicing in the area, [21] declares that Attorney Meyer should be awarded "*at least $350.00 per hour.*"[22] Attorney Rodgers' Declaration sets out clearly and specifically, the unique-to-employment-litigation challenges faced by practitioners, buttressed by her own very significant successful experiences and publicly acknowledged expertise in this complex area of the law.[23]

## VII. Plaintiff is Entitled to the Reasonable Costs Incurred in this Case.

Each of the fee shifting statutes also allows for litigation expenses or costs of litigation to be paid by the employer to the successful Plaintiff employee. USERRA specifies "*reasonable attorney fees, expert witness fees, and other litigation expenses;*[24]" (emphasis added*).* The Massachusetts Wage Act, under which Plaintiff's commissions were awarded, specifies "*the costs of litigation and reasonable attorney fees;*[25]" The Massachusetts Overtime Statute specifies "*[damages] together with costs and such reasonable attorney fees as may be allowed by the court (*for claims before July 12, 2008) [26]" and the newer (for claims after July 12, 2008) "*...shall be awarded the costs of the litigation and reasonable attorneys' fees.*[27]" The Massachusetts Discrimination Act, MGL c. 151B (to be interpreted liberally[28]) calls for the payment *("irrespective of the amount in controversy")* of "*reasonable attorney's fees and costs unless special circumstances would render such an award unjust...*"

---

[19] Id., paragraphs 5 and 8
[20] Id., paragraph 10
[21] Id, paragraphs 3 and 4
[22] Id., paragraph 8
[23] Id., paragraphs 4 and 5
[24] 38 U.S.C. Sec. 4323 (h)(2)
[25] M.G.L. c. 149, Sec. 150
[26] M.G.L. c. 151B, Sec. IB
[27] Id.
[28] M.G.L. c. 151B, Sec 9

The costs and expenses, including the expert witness expense, listed by counsel are detailed, specific and all were incurred in reasonable and necessary service of the Plaintiff's case under one or more of the above statutory bases.  Accordingly, Plaintiff seeks for an award of those expenses and costs in addition to his attorney fees.

## VIII. Conclusion

For all the foregoing reasons, Sgt. Fryer respectfully requests that this Honorable Court award through trial:

1.  $113,513.21 for Attorney Richards-Shower's fees through trial (only); and
    $590.09 and costs through trial
$114,103.30 (through trial)

2. For Attorney Meyer's offices' fees and costs through trial (only) fees and costs as follows:

$66,917.50 for Attorney Meyer (205.9 hours)

$135.00 for Patrick Arnold, intern (1.5 hours)

$221.00 for Patty Carrel, paralegal (2.6 hours)

$76.50 for Sarah Prescott, paralegal (.9 hours)

$7,863.17  in costs/expenses

$75,213.17;

3. Permission to file trial a further post trial motion for fees and costs following the court's ruling on the pending motions for multipliers and interest and this motion for fees, all of which account for the post-trial fees expended; and

18

4. Such other relief the court deems just and proper.

Respectfully submitted

/s/Nancy Richards-Stower
Nancy Richards-Stower
BB0# 560850
Law Offices of Nancy Richards-Stower
32 Daniel Webster Highway, Suite 7
Merrimack, NH 03054
603-881-3312
JobsAndJustice@aol.com

/s/Jon Meyer
Jon Meyer
BBO# 344391
Backus, Meyer, Solomon & Branch, LLP
116 Lowell Street
P.O. Box 0516
Manchester, NH 03105-016
603-668-7272
jmeyer@backusmeyer.com

Attorneys for the Plaintiff

Certificate of Service
I certify that on this  7 day of December, 2009, I caused a true copy of the within
**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS POST TRIAL MOTION
FOR ATTORNEY FEES** be filed electronically with the court's CM/ECF system and
thereby served upon each of the following via email:

Jon Meyer
BBO# 344391
Backus, Meyer, Solomon & Branch, LLP
116 Lowell Street
P.O. Box 0516

19

Manchester, NH 03105-016
603-668-7272
jmeyer@backusmeyer.com

Kevin J. Murphy
BBO# 363115
One Courthouse Lane
Chelmsford, MA 01824
978-459-6320
Kevinmurpy@conversent.net

/s/ Nancy Richards-Stower