UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEPHEN FRYER,
    Plaintiff,

    v.                                    CIVIL ACTION NO.
                                          09-10178-MBB
A.S.A.P. FIRE AND SAFETY CORP, INC.,
JOSEPH SHEEDY and BRIAN COTE,
    Defendants.


**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**
**(DOCKET ENTRY # 46)**

**November 4, 2010**


**BOWLER, U.S.M.J.**

    Pending before this court is a motion for attorneys' fees and costs filed by plaintiff Stephen Fryer ("plaintiff"). (Docket Entry # 46).  Defendants A.S.A.P. Fire and Safety Corporation, Inc. ("ASAP"), Joseph Sheedy ("Sheedy") and Brian Cote ("Cote") (collectively:  "defendants") oppose the motion. (Docket Entry # 52).

    Plaintiff seeks attorneys' fees, costs and expenses under 38 U.S.C. § 4323(a)(2)(A), section 150 of Massachusetts General Laws chapter 149 ("chapter 149") and section 1B of Massachusetts General Laws chapter 151B ("chapter 151B").  (Docket Entry # 46). Plaintiff submits that attorneys' fees in the amount of $180,863.21 and costs in the amount of $8,453.29 are reasonable

because of the complexity injected into the case by the time constraints of plaintiff's impending deployment, ASAP's record keeping practices and ASAP's failure to fully comply with discovery requests.

PROCEDURAL BACKGROUND

As set forth in the amended complaint, plaintiff, a member of the Massachusetts National Guard, brought claims for violations of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4311 et seq. ("USERRA"), section 150 of chapter 149 and sections 1B and nine of chapter 151B. (Docket Entry # 12).

During discovery, plaintiff's attorneys Jon Meyer, Esq. ("Attorney Meyer") and Nancy Richards-Stower, Esq. ("Attorney Richards-Stower") (collectively: "plaintiff's counsel") made repeated requests for documents and answers to interrogatories to which they believed defendants did not fully answer.  Plaintiff's counsel subsequently filed a motion to compel discovery and for sanctions on September 22, 2009.  (Docket Entry # 16).  On October 19, 2009, this court denied the motion to compel without prejudice to be renewed if satisfactory production was not made in ten days and ordered the portion of the motion seeking

2

sanctions to be renewed at the end of the case.  (Docket Entry #
20).  Defendants produced additional documents and made Cote
available by telephone to help work through the documents
provided.  Plaintiff did not renew the motion to compel.[1]
(Docket Entry # 46).

On June 22, 2009, plaintiff voluntarily dismissed counts
brought under the Fair Labor Standards Act of 1938, 28 U.S.C. §
201 ("FLSA"), and Massachusetts common law.  (Docket Entry # 13).
Plaintiff thereafter proceeded to trial on the claims that
defendants violated USERRA by failing to reemploy him in his
predeployment position, discriminating and retaliating against
him because of his military service and terminating him because
of his military service.  Plaintiff also alleged discriminatory
and retaliatory treatment on the basis of his military service
under chapter 151B.  Finally, plaintiff brought claims for
denying him definitely determinable sales commissions in
violation of section 148 of chapter 149 and overtime wages in
violation of sections 1A and 1B of chapter 151.

With the exception of not finding liability on the part of
Sheedy and Cote for lost overtime, the jury found in plaintiff's

---

[1]  Plaintiff cites to defendants' production of documents as well
as not wanting to risk postponing the trial date as reasons for
not renewing the motion to compel.  (Docket Entry # 46).

favor on all claims.  In answer to a 31 question verdict form,
the jury found defendants liable on the discrimination,
retaliation, reemployment and discharge claims under USERRA.  The
jury awarded plaintiff back pay in the amount of $42,234
consisting of lost wages and benefits.  It found that each
defendant acted willfully which resulted in a doubling of the
award.  The jury also found defendants liable on the two chapter
151B claims for discrimination and retaliation.  Adhering to the
instructions not to award compensatory damages more than once for
the same injury, the jury did not award back pay under chapter
151B but did award front pay in the amount of $105,000 and
emotional distress damages in the amount of $289,000.  In
addition, plaintiff was awarded $5,260 as compensation for earned
commissions and $4,240 as compensation for lost overtime.

Defendants subsequently filed a motion for a new trial or,
in the alternative, a remittitur of the jury's $505,748 verdict.
(Docket Entry # 41).  Plaintiff opposed the motion (Docket Entry
# 48) and this court denied it on January 25, 2010.  (Docket
Entry # 57).  On December 7, 2009, plaintiff filed the motion for
attorneys' fees and costs.  (Docket Entry # 46).  Defendants
oppose the amount of fees and various items included in the fee

request.  (Docket Entry # 52).  They maintain that:  (1) 554.55 hours of work is excessive and unreasonable for this straightforward employment termination case; and (2) the fee is disproportionate to the results obtained.  (Docket Entry # 52).

<u>FACTUAL BACKGROUND</u>

Having set out the factual background in the January 25, 2010 Memorandum and Order (Docket Entry # 57) denying defendants' first motion for a new trial (Docket Entry # 41), it need not be repeated at length.

Plaintiff joined ASAP in January 2006 and in January 2007 he reenlisted in the Massachusetts National Guard.  He received a deployment letter in February 2007 at which time ASAP slowed or withheld payment of certain commissions.  Plaintiff reported for active duty on May 1, 2007, and went to Kuwait a month later. During his military service, ASAP did not pay the overdue commissions.

When plaintiff returned home in May 2008, ASAP informed him that there were no positions available.  Plaintiff sent ASAP a certified letter dated May 22, 2008, formally requesting reinstatement to his position.  Plaintiff received a telephone call from ASAP instructing him to report to work on June 30,

2008, in a position that was not plaintiff's predeployment position or a position of like seniority, status or pay. Plaintiff accepted the position but requested to return to his former position.

In late October 2008, ASAP terminated plaintiff.  Ample evidence supports viewing the reasons given as pretextual with the real reason being plaintiff's military service and his complaints about not having the benefits and the responsibilities of his predeployment position.  Plaintiff submits that his repeated and active attempts to obtain work over the course of the year following his termination proved unsuccessful.  He contends that these circumstances compounded the financial difficulties, the emotional stress and the depression he experienced.  Plaintiff subsequently received news of another deployment to take place as early as January 2010 and later anticipated for March 2010.  (Docket Entry # 46).


## DISCUSSION

As mentioned previously, plaintiff seeks attorneys' fees in the amount of $180,863.21 and costs in the amount of $8,453.29. (Docket Entry # 46).  While defendants question the reasonableness of the requested amount, they do not directly

challenge plaintiff's entitlement to an award.  (Docket Entry #
52).

Under the American Rule, each party ordinarily bears his own
attorneys' fees absent express statutory authority to the
contrary.  See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,
421 U.S. 240, 241 (1975).  USERRA was enacted in part to
"encourage non-career service in the uniformed services" and to
"minimize the disruption to the lives of persons performing
service in the uniformed services."  38 U.S.C. § 4301(a)(1).
Consequently, the statute provides that, "An employee so
aggrieved who prevails in such an action . . . shall be awarded
the costs of litigation and reasonable attorneys' fees."  38
U.S.C § 4323(a)(2)(A).  In light of plaintiff's recovery under
USERAA, section 150 of chapter 149 and sections 1B and nine of
chapter 151B, he is a prevailing party and thus entitled to
attorneys' fees and costs.  This court therefore turns to a
lodestar analysis to calculate a reasonable fee award.

I.  Lodestar Analysis

"The trial court's discretion in respect to fee awards is
extremely broad."  Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir.
1992).  In guiding the court's discretion, it is appropriate to
calculate the fee using the lodestar method.  See Fontaine v.

Ebtech Corp., 613 N.E.2d 881, 892 (Mass. 1993) ("in a simple discrimination case, the basic fee award [under section nine of chapter 151B], calculated by the lodestar method, is adequate to achieve the statutory purpose"); Grendel's Den Inc. v. Larkin, 794 F.2d 945, 950 (1st Cir. 1984).  The lodestar method multiplies the total number of hours reasonably spent preparing and litigating a matter by the fair market rate.  See Fontaine v. Ebtec Corp., 613 N.E.2d at 892; see also Grendel's Den, Inc. v. Larkin, 749 F.2d at 950.

A.   Number of Hours Reasonably Spent

     The usual starting place is the billing record supplied by the plaintiffs.  See Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d 288, 295-96 (1st Cir. 2001); accord Killean v. Westban Hotel Venture, LP., 872 N.E.2d 731, 737 (Mass.App.Ct. 2007) (inquiry "should begin . . . with the amount of time documented by the plaintiff's attorney").  Plaintiff is seeking payment for 530.22 hours of time spent by plaintiff's counsel and supporting personnel.  Defendants submit that the novelty and complexity should be considered in determining the reasonableness of the number of hours spent.  Defendants assert that this is a straightforward termination case and that the

requested hours should therefore be reduced accordingly.  (Docket Entry # 52).

Plaintiff submits that because of the complexity of the case the number of hours for which award is requested is reasonable. Plaintiff argues that USERRA, enacted in 1994, is a relatively new statute that in the case at bar involved complicated issues of proof.  Plaintiff further submits that the trial needed to take place before his possible January 2010 deployment as plaintiff's counsel feared he might return unable to testify, changed in a way that testimony would be ineffective or that he could possibly lose his life.  (Docket Entry # 46).  Plaintiff's counsel deemed his testimony necessary to the success of his claims because nearly all of plaintiff's potential witnesses remained employed by ASAP.  (Docket Entry # 46).

Additionally, according to plaintiff, ASAP's records did not distinguish between earned salary commissions or overtime.  The records thus required tedious indexing and mathematical calculations to establish the accurate and provable amount of commissions and unpaid overtime required to recover under a number of the claims.  Plaintiff's counsel asserts that ignoring document requests and interrogatories on the part of defendants

heightened time and evidentiary constraints.  (Docket Entry #
46).

Defendants challenge the following entries as excessive and
in need of reduction:  (1) five hours to research court rules and
electronic filing requirements; (2) over four hours of work in
connection with a proceeding before the Massachusetts Commission
Against Discrimination ("MCAD"); (3) seven hours to "amend [a]
complaint"; (4) over ten hours to "review a file"; (5) 6.67 hours
to prepare plaintiff for deposition; (6) 13 hours to draft a
motion to compel; and (7) over 31 hours to prepare for
plaintiff's direct testimony.  (Docket Entry # 52).  Calculating
"the number of hours reasonably spent" initially involves
determining the number of hours spent and then subtracting hours
that "were duplicative, unproductive, excessive, or otherwise
unnecessary."  Grendel's Den, Inc. v. Larkin, 749 F.2d at 950-52;
see also Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st
Cir. 2008) (citing Hensley v. Eckerhart, 461 U.S. at 434 ("hours
that are excessive, redundant, or otherwise unnecessary" should
be excluded from fee request)).

Turning to item number one and reviewing the invoices,
throughout litigation plaintiff's counsel spent under five hours
researching court rules, federal rules and electronic

10

requirements.  (Docket Entry # 46, Ex. 4 & 6).  This research was necessary for the correct filing of plaintiff's claims and is appropriately included in the calculation of attorneys' fees.  See, e.g., McLaughlin v. Boston School Committee, 976 F.Supp. 53, 62 (D.Mass. 1997) (legal research appropriate to include in fee calculation).

As to item number two and under Massachusetts law, plaintiff may not resort to the courts for a discrimination claim unless he previously filed a timely complaint with the MCAD.  Reidy v. Travelers Ins. Co., 928 F.Supp. 98, 107 (D.Mass. 1996).  Attorney Richards-Stower spent less than five hours at the MCAD on June 8, 2009, during which time she made a filing and attended multiple meetings with administrators and staff.  (Docket Entry # 46, Ex. 4).  Inasmuch as the filing with the MCAD was a prerequisite to the discrimination claim in this court, these hours are appropriately and reasonably included in the fee request.

As to the third item, plaintiff's counsel spent seven hours that defendants challenge as excessive to draft and file the proposed amended complaint.  (Docket Entry # 46, Ex. 4).  In the amended complaint, plaintiff's counsel added the MCAD and 151B discrimination claims on which plaintiff prevailed at trial.

11

Amending the complaint in this manner was therefore productive and necessary time.

With respect to the fourth item, defendants maintain that 10.8 hours billed by plaintiff's counsel on June 26, 2009, were excessive to "review a file."  (Docket Entry # 52).  The actual invoices include review of multiple files, draft of "complaint to facilitate," document requests and interrogatories.  (Docket Entry # 46, Ex. 4).  Given the multiple tasks completed and the necessity for such tasks, the amount of time is reasonable.

With respect to the fifth item, the invoices reflect 6.67 hours billed on July 30, August 5 and August 6, 2009, to prepare plaintiff for his deposition.  (Docket Entry # 52).  As nearly all of plaintiff's potential witnesses remained employed by ASAP, plaintiff's deposition was crucial to the case.  This court therefore finds it reasonable to include this time in the fee request.

Under the sixth item, defendants challenge as excessive the 13 hours billed on September 18 and September 19, 2009, to draft the motion to compel.  (Docket Entry ## 52 & 16).  Due to the difficulties faced by plaintiff's counsel during discovery and in light of defendant producing additional documents after the

filing of the motion, these hours are both reasonable and productive.

Turning to item seven, defendants submit that over 31 hours spent on November 13, November 14 and November 15, 2009, is excessive to prepare plaintiff for his direct testimony. Despite the important role plaintiff's testimony played in the case, this court reduces the number of hours requested by Attorney Richards-Stower by ten hours to more reasonably reflect the amount of time required given the nature of the task and the experience of plaintiff's counsel. See Torres-Rivera v. O'Neill-Cancel, 524 F.3d at 336.

Defendants next challenge as excessive and not compensable hours spent by both Attorney Meyer and Attorney Richards-Stower to attend depositions, a meeting and court appearances. Defendants point specifically to a three hour meeting on March 24, 2009, depositions, status and pretrial conferences,[2] as well as six days of trial where both attorneys billed for their time. (Docket Entry # 52).

Plaintiff asserts that rather than creating additional hours of billable time, joint attendance enabled counsel to reduce the hours plaintiff's counsel expended on other tasks such as

---

[2]  The invoices reflect 45 hours billed for depositions and court conferences on August 10, September 2, October 13, October 19 and November 12, 2009.

discussion about the meeting, the depositions and court appearances. (Docket Entry # 46). Plaintiff's counsel had a division of labor based on Attorney Meyer and Attorney Richards-Stower's expertise and experience, according to plaintiff. (Docket Entry # 46). Plaintiff further submits that it is not appropriate for "only one attorney to appear for any party in any employment case in federal court or state court." (Docket Entry # 46).

Contrary to plaintiff's position, the "'time of two or three lawyers in a courtroom or conference, when one would do, 'may obviously be discounted.'" Lipsett v. Blanco, 975 F.2d at 938 (quoting Hart v. Borque, 798 F.2d 519, 523 (1st Cir. 1986)); see also U.S. v. One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named Flash II, 546 F.3d 26, 44 (1st Cir. 2008) (noting problem of overstaffing in cases involving prospect of fee shifting and that in that case there was not a legitimate need for a second attorney). "A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." United Nuclear Corp. v. Cannon, 564 F.Supp. 581, 590 (D.R.I. 1983). That said, given "the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic."

Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d at 297.

Staffing issues are "often best resolved by the trial court's application of its intimate, first-hand knowledge of a particular case's nuances and idiosyncrasies." Wagenmann v. Adams, 829 F.2d 196, 224-25 (1st Cir. 1987).  In consideration of plaintiff's counsel's significant experience in employment law matters, the use of a second attorney at the March 2009 meeting, the depositions and the court conferences was not warranted. Accordingly, the reward will be reduced by $6,440 to account for 18.4 hours of duplicative time billed by Attorney Richards-Stower.

The use of both attorneys during the six days of trial, however, was appropriate.  See, e.g., Rini v. United Van Lines, 903 F.Supp. 234, 238 (D.Mass. 1995) ("use of two attorneys to try the case was entirely appropriate and customary"); Computer Systems Engineering, Inc. v. Qantel Corp., 571 F.Supp. 1379, 1381 (D.Mass. 1983) ("nature and complexity of the case warranted in-court use of associate counsel"); Mustapha v. DaimlerCrysler Co., Inc., 2007 WL 4878914, *19 (Mass.Super. Jan. 15, 2007) (presence of second attorney at trial necessary even though he did not examine witnesses because the "case was complicated" and lead

counsel needed to confer with the additional attorney).   It is also worth noting that defendants had two attorneys of record during the trial.

Defendants additionally challenge fees for hours unreasonably billed for unrelated matters.   Specifically, they challenge time spent on plaintiff's civil suit arising out of an automobile accident as well as research on survival of a decedent's claims.[3]   (Docket Entry # 52).   Plaintiff's counsel do not address the inclusion of research for survival of decedent's claims in the fee calculation.   They do indicate that they included hours spent on plaintiff's automobile accident case because issues of indemnification and depositions in the automobile accident case directly related to the case at bar. (Docket Entry # 46, Ex. 4).

The record fails to show a common "core of related facts" or "related legal theories" to justify awarding fees for work done relative to the survival of a decedent's claim.   See Garrity v. Sununu, 752 F.2d 727, 734 (1st Cir. 1984) ("where as here . . . attorneys' fees are allowed to the prevailing party the question becomes whether . . . claims included 'a common core of facts,'

---

[3]   Time sheets dated January 10, January 14, March 25 and April 21, 2009 (Docket Entry # 46, Ex. 4) reflect the time spent on the automobile accident case and the research relative to the survival of a decedent's claims.

or were 'based on related legal theories,' linking them to the successful claim.") (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. at 435); <u>accord</u> <u>Lipsett v. Blanco</u>, 975 F.2d at 940.  It was necessary and reasonable that testimony at trial included the automobile accident, however, thereby warranting compensation. Accordingly, the time Attorney Richards-Stower (1.05 hours) invoiced for plaintiff's potential survival of a decedent's claim is not included in the fee award.  The remaining hours are appropriate and reasonable.  This court therefore turns to the hourly rate.

B.  <u>Reasonable Hourly Rate</u>

To determine the reasonable hourly rate, the court "applies the prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)."  <u>Gay Officers Action League v. Puerto Rico</u>, 247 F.3d at 295; <u>see</u> <u>also</u> <u>Andrade v. Jamestown Housing Authority</u>, 82 F.3d 1179, 1190 (1st Cir. 1996).  The prevailing market rate in a community is the rate charged "'for similar services by lawyers of reasonable comparable skill, experience and reputation.'"  <u>Andrade v. Jamestown Housing Authority</u>, 82 F.3d at 1190 (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)). The relevant community for determining hourly rates is the community where the court sits.  <u>See</u> <u>Stokes v. Saga International</u>

17

Holidays, Ltd., 376 F.Supp.2d 86, 92 (D.Mass. 2005) (Boston provides "the 'relevant community' against which the rates will be determined"); Parker v. Town of Swansea, 310 F.Supp.2d 376, 388 (D.Mass. 2004); Alfonso v. Aufiero, 66 F.Supp.2d 183, 197 (D.Mass. 1999).  With this framework in mind, this court turns to the rates for the attorneys involved noting that plaintiff's counsel voluntarily removed hours from the fee request for claims dismissed in the amended complaint.

With respect to Attorney Meyer, plaintiff seeks to recover a total of $66,484 representing 204.57 hours of work performed through trial at an hourly rate of $325.  (Docket Entry # 46). Attorney Meyer submits a declaration to support the hourly rate. (Docket Entry # 46, Ex. 5).  Attorney Meyer graduated from Harvard Law School in 1975 and earned his degree cum laude.  He has extensive experience representing employees in employment cases and is a former chair of the New Hampshire Bar Association's section on labor and employment law.

Plaintiff additionally requests fees for the services of Attorney Richards-Stower totaling $113,513.21 representing 324.32 hours of work performed through trial at an hourly rate of $350. (Docket Entry # 46).  She also submits an affidavit to support the hourly rate.  (Docket Entry # 46, Ex. 3).  Attorney Richards-Stower's practice began in 1967 and now concentrates exclusively

18

in the representation of employees in matters involving
discrimination, retaliation, wrongful termination, whistle
blowing and defamation in New Hampshire and Massachusetts.
(Docket Entry # 46, Ex. 3).  Among Attorney Richards-Stower's
numerous legal distinctions, she has been inducted into the
College of Labor and Employment Lawyers and in 1993 founded the
New Hampshire chapter of the National Employment Lawyers
Association.

Plaintiff also provided affidavits by Attorneys Elizabeth
Rodgers, Esq. ("Rodgers"), Dahlia Rudavsky, Esq. ("Rudavsky") and
Kevin Powers, Esq. ("Powers").  (Docket Entry # 46, Ex. 7, 8, &
9).  As set out in the affidavits, all three attorneys know
plaintiff's counsel, are reputable in the employment law
community and have comparable experience in Boston.  All recently
billed over $350 per hour for their services or received awards
reflecting this hourly rate.  (Docket Entry # 46, Ex. 7, 8, & 9).
Rodgers, Rudavsky and Powers endorse the hourly rates of
plaintiff's counsel as reasonable if not modest in comparison to
the prevailing market rate and their experience.  (Docket # 46,
Ex. 7, 8 & 9).  Additionally, attorneys' fees in the range of
$200 to $375 per hour are not uncommon in the Boston area for
attorneys with comparable or less experience than plaintiff's
counsel.  See, e.g., Stokes v. Saga Intern. Holidays, Ltd., 376

F.Supp.2d at 93 (approving requested $375 hourly rate for 1972
law school graduate with over "30 years of business and
commercial litigation experience"); Guckenberger v. Boston
University, 8 F.Supp.2d 91, 105 (D.Mass. 1998) (applying "rates
for the lawyers in this case ranging from $140 to $325 per hour"
with Boston as the relevant community).

     Defendants do not address the hourly rates except to submit
that:  "The trial judge is best positioned after viewing
counsel's abilities to determine their 'market rate.'"  (Docket
Entry # 52).  In light of Attorney Meyer and Attorney Richards-
Stower's significant experience in employment law matters and the
supporting affidavits evidencing a rate commensurate with the
rates requested, this court finds the hourly rates of $325 and
$350 reasonable and in line with rates of comparably skilled
attorneys in the Boston community.

     Plaintiff, however, fails to adequately support the
requested $85 hourly rate of Attorney Meyer's assistant Patricia
Carrel ("Carrel"), the $90 hourly rate of former legal intern
Patrick Arnold ("Arnold") and the $85 hourly rate of paralegal
Sarah Prescott ("Prescott").  Attorney Meyer simply avers that
the "rates charged for their services are the same rates . . .
charged for their services to private clients."  (Docket Entry #
46, Ex. 5).  Plaintiff does not provide any additional

information as to their education and experience to support the
rates or the location of the private clients as in New Hampshire,
Massachusetts or more notably, Boston.

As the fee applicant, plaintiff must provide evidence that
establishes the skill and experience of the person for whom fees
are requested as well as evidence that informs the court of the
relevant prevailing market rate.  See Martino v. Massachusetts
Bay Transportation Authority, 230 F.Supp.2d 195 (D.Mass. 2002),
(interpreting Massachusetts law with regard to state retaliation
claim and resultant request for fees); see Calhoun v. Acme
Cleveland Corp, 801 F.2d 558, 560 (1st Cir. 1986) (citing King v.
Greenblatt, 560 F.2d at 1025).  Where the information relative to
experience is "lacking, as it was here, we do not think it should
be supplied by the district court."  Calhoun v. Acme Cleveland
Corp., 801 F.2d at 560.  Accordingly, this court will exclude
fees amounting to $432.50 requested for Carrel, Arnold and
Prescott from the fee calculation of the lodestar amount.

C.   Adjustment of the Lodestar Amount

Defendants argue that because plaintiff's counsel met with
him shortly after he returned from Iraq, they anticipated "this
litigation even prior to plaintiff's reemployment and subsequent
termination."  (Docket Entry # 52).  In fashioning the lodestar,
"the court can segregate time spent on certain unsuccessful

claims, eliminate excessive or unproductive hours, and assign
more realistic rates to time spent." Coutin v. Young & Rubicam
Puerto Rico, Inc., 124 F.3d at 337 (citations omitted).
Defendants, however, fail to offer any evidence or identify any
authority to support that an early meeting between plaintiff's
counsel and plaintiff would make attorneys' fees excessive or
unproductive.

Defendants' final argument is that absent the emotional
distress damages the jury award is "at best very modest" and that
the fee request is clearly disproportionate to the result
obtained.  (Docket Entry # 52).  A court may consider the amount
of damages recovered in relation to the amount sought and then
lower the amount of attorneys' fee request if appropriate.
Farrar v. Hobby, 506 U.S. 103, 114 (1992).  Further, success or a
downward adjustment based on "the results obtained," is not
limited to analyzing success on different claims and their
interrelatedness.  See Coutin v. Young & Rubicam Puerto Rico,
Inc., 124 F.3d at 388.  "[T]he relief actually achieved" or "the
societal importance of the right which has been vindicated" is
also of importance.  Coutin v. Young & Rubicam Puerto Rico, Inc.,
124 F.3d at 338.

In the case at bar, plaintiff prevailed on all claims with
the exception of the jury not finding liability on the part of

22

Sheedy and Cote for lost overtime.  Aside from the emotional
distress damages award, plaintiff received an award of back pay
in the amount of $42,234 and front pay in the amount of $105,000
in addition to compensation for earned commissions and lost
overtime, certainly not insignificant or insubstantial sums.
See, e.g., Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d
at 340 (characterizing $45,000 award as "substantial in absolute
terms").  Finally, the lawsuit achieved greater protection of
plaintiff's employment rights as well as protection from
employment discrimination on the basis of his military service.
In the circumstances of this case, therefore, "it goes without
saying that reasonable fees should be paid for time productively
spent without any discount for limited success."  Id. at 399.

Plaintiff did not request an upward adjustment of the fee as
calculated.  Inasmuch as he bears the burden of justifying an
upward adjustment, see Blum v. Stenson, 465 U.S. at 898, and such
an adjustment is proper in few cases, Pennsylvania v. Delaware
Valley Citizens' Council for Clean Air, 478 U.S. at 564-65, an
upward adjustment in the instant case is not warranted.

Using the lodestar approach and consistent with the
foregoing analysis, an attorneys' fee award comprised of
$66,484.5 for the services of Attorney Meyer (reflecting the
subtraction of $432.50 for the services of assistants and

paralegals) and $103,205.71 for the services of Attorney

Richards-Stower (having removed $367.5 for 1.05 hours billed for

plaintiff's potential survival of decedent's claim, $3,500.00 for

ten hours billed in excess for preparing plaintiff's testimony

and $6,440.00 for 18.4 hours billed by both attorneys when a

single attorney would have sufficed) is reasonable and represents

the objective worth of the services.  Plaintiff is thus awarded

$169,690.21 in attorneys' fees.

II.  <u>Costs</u>

Plaintiff requests an award of $590.90 for costs associated

with the work of Attorney Richards-Stower and $7,863.17 for costs

associated with the work of Attorney Meyer which includes payment

of plaintiff's expert witness.  Costs otherwise include those for

filing, service fees, copying, travel, parking and depositions.

(Docket Entry # 46, Ex. 4).  USERRA allows an award of reasonable

attorneys' fees, expert witness fees and other litigation

expenses.  <u>See</u> 38 U.S.C. § 4323(a)(2)(A); <u>see</u>, <u>e.g.</u>, <u>Serricchio</u>

<u>v. Wachovia Securities, LLC</u>, 2010 WL 1330629, *7 (D.Conn March

31, 2010).  Defendants do not address this issue.  The expenses

are reasonable and customary "out-of-pocket expenses incurred by

counsel . . . which are customarily understood as 'attorney's

fees.'"  <u>Data General Corp. v. Grumman Sys. Support Corp.</u>, 825

F.Supp. 340, 368 (D.Mass. 1993) ("out-of-pocket expenses" may

include such items as "courier service, computer research, local travel, meals, telephone, postage, and parking"). Having reviewed the invoices, the expenses are therefore compensable. See Data General Corp v. Grumman Sys. Support Corp., 825 F.Supp. at 368; accord Pinkham v. Camex, Inc., 84 F.3d 292, 294-95 (8th Cir. 1996).

III.  Interest

As a final matter, on January 25, 2010, this court allowed plaintiff's post trial motion for interest (Docket Entry # 45) while noting that applicable postjudgment interest on attorneys' fees and costs will be addressed in conjunction with the motion for fees.  (Docket Entry # 56).  Postjudgment interest "is to be calculated to affect the entire judgment, including attorney's fees and costs awarded herein." McDonough v. City of Quincy, 353 F.Supp. 2d 179, 192 (D.Mass. 2005); accord Mill Pond Assocs., Inc. v. E & B Giftware, Inc., 751 F.Supp 299, 302-03 (D.Mass. 1990).  Postjudgment interest will thus be calculated from November 24, 2009.  See McDonough v. City of Quincy, 353 F.Supp 2d at 192 ("[p]ost judgment interest runs from the date of entry of the merits judgment"); see also Mogilevsky v. Bally Total Fitness Corp., 311 F.Supp. 2d 212, 224 (D.Mass. 2004). Accordingly, this court awards $69,237.12 in interest calculated at the rate of .41% on the attorneys' fees and costs awarded.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, plaintiff's motion for attorney's fees (Docket Entry # 46) is **ALLOWED** to the extent that plaintiff is entitled to an award of attorneys' fees and costs in the amount of $178,144.28.  In addition, postjudgment interest on attorneys' fees and cost are awarded in the amount of $69,237.12.




 /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge